THE TOPEKA CITY RAILWAY COMPANY V. BYRON ROBERTS, *as Treasurer of Shawnee County, et al.*

TAXES —*Valuation Increased Without Notice — Injunction, Maintained.* After the property of a tax-payer had been listed, valued and assessed, and the taxes levied thereon had been paid, the county commissioners determined that there had been an undervaluation of the property, and directed the county clerk to enter an additional valuation on the property, and to charge additional taxes thereon, which was done without notice. When the tax-payer learned what had been done, he appeared before the board and asked to have the assessment and taxes canceled and set aside. *Held,* That the taxes so charged were void, and that the owner of the property can maintain injunction to restrain the collection of the illegal taxes, although he first applied to the county board to cancel and set aside the same, and although he did not appeal from the adverse decision of the board.

### *Error from Shawnee District Court.*

ACTION to restrain the collection of certain taxes. Judgment for the defendants on January 5, 1888. The plaintiff *Railway Company* brings the case to this court. The material facts are stated in the opinion.

*Gleed & Gleed,* for plaintiff in error.

*R. B. Welch,* county attorney, for defendants in error.

The opinion of the court was delivered by

JOHNSTON, J.: This was an action to enjoin the collection of certain taxes alleged to have been illegally charged against the property of the plaintiff by the county clerk of Shawnee county. It appears that the Topeka City Railway Company was engaged in business in the city of Topeka in 1885, and had property subject to taxation for that year. On the 1st day of June, 1885, Joab Mulvane, the president of the company, made a statement to the assessor of the company's personal property subject to taxation for that year, which statement the assessor accepted, and returned the valuation of the company's property to the county clerk as the same had been

returned by the company in the statement aforesaid, which return the assessor duly certified under oath. Subsequently, the county board of equalization met and equalized the property of the county, but it did not change the valuation of the property listed and returned as aforesaid. The county clerk placed upon the tax-roll of the county for that year the valuation so returned, and charged against the company a due proportion of all the taxes for that year, and afterward the company in due time paid to the county treasurer the full amount of all the taxes charged against it. Subsequently, a special agent of the county, who had been appointed to search for property subject to and which had escaped taxation, or which had been taxed at less than its true value, made a report that the company had omitted in its statement made to the assessor $25,395 of its personal property subject to taxation for 1885, by making an undervaluation thereof. On February 6, 1886, the board of county commissioners made an order, directing the county clerk to place upon the tax-roll of the county a valuation of $25,395 opposite the name of the company as an additional assessment on the plaintiff's property, and to charge taxes thereon for that year to the amount of $1,086.86, which was done. No notice in writing of the proceedings by the special agent or the board of county commissioners or county clerk, in correcting the assessor's return, and in entering an increased valuation of the company's property on the tax-roll, was given to plaintiff until the proceedings had been taken, nor until February 27, 1886, when the president of the company received through the post office a postal card from the county treasurer, stating that additional taxes had been charged against the company. On March 13, 1886, the president of the company attended a meeting of the board of county commissioners, and made a statement under oath, and advanced arguments to the board to obtain an order for the cancellation and setting aside of the additional assessments and charges, and for an order to the county clerk to strike the same from the tax-roll. Subsequently, the board reduced the charge of taxes against the plaintiff from $1,086.86

to the amount of $272.20.    The county treasurer was about to collect the taxes charged, when this proceeding was brought to restrain him.

The only authority for the increase of the valuation and for the additional taxes charged against the company was under § 70 of chapter 34 of the Laws of 1876.    This statute, however, provides that no change or correction shall be made until notice has been given.    No notice or opportunity to be heard was given to the company before the increased valuation and additional tax were entered and charged against the company on the tax-roll, and the action of the board and the clerk in entering and charging the same was clearly invalid, and the tax sought to be collected by the treasurer is wholly void.    The invalidity of their action is conceded, but it is claimed that the appearance and action of the company before the board on March 13, 1886, waived the notice and cured the invalidity of the levy.    We do not agree with this contention.    The appearance at that time was for the sole purpose of inducing the board to order the clerk to strike from the tax-roll and to cancel and set aside the illegal assessment and charges that had been made and entered against the company.    The right of the county clerk or commissioners to proceed at that time under § 70 of the tax law to correct the assessment of the company was not conceded, nor did the findings show that the company waived the want of notice. The facts and proceedings in this case are very similar to those in *Comm'rs of Leavenworth Co. v. Lang*, 8 Kas. 284.    There, the board attempted to increase the valuation of Lang's property without giving the notice required by law.    After Lang learned of the increase, he went before the board and moved to have the error corrected, as was done by the city railway company in the present case; but failing in this, he sued out an injunction to stop the collection of the additional tax sought to be charged against him.    Chief Justice KINGMAN, who delivered the opinion of the court, held that the board was not authorized to proceed without notice, and that "their action in the premises was clearly invalid.    Defendant, when

he learned of the action of the board in December, moved the board to correct their error. Failing there, he paid the taxes he was justly chargeable with, and obtained an injunction to stop the collection of the illegal portion of the tax. This he was entitled to." (See, also, *Griffith v. Watson*, 19 Kas. 27; *Comm'rs of Lyon Co. v. Sergeant*, 24 id. 572.) These authorities settle the question that the tax-payer is entitled to the remedy of injunction, although he may have first asked the board to cancel and set aside the illegal assessment and levy made against him, and although he may not have appealed from the decision of the commissioners refusing to cancel and set aside such illegal assessment and charge.

The judgment of the district court will be reversed, and the cause remanded with directions to enter judgment upon the findings in favor of the plaintiff in error.

All the Justices concurring.